The next case on the calendar is Keller Foundations v. Zurich American Insurance Company. Good morning, your honors, and may it please the court. My name is Bethany Barisi, I am joined today by Tracy Sachs. We are counsel for Plaintiff Appellants Keller Foundations, LLC, Hayward Baker, Inc., and Keller Group, PLC. On behalf of the plaintiffs, we respectfully request that this court reverse the Southern District's dismissal of the plaintiff's amended complaint. Your honors, this is a highly unusual insurance coverage case. It's our position that Zurich breached the terms of the policy that it issued to the plaintiffs, not by failing to pay a claim that was covered under the policy, but by paying a claim that was not covered under the policy. Zurich used our policy to settle a claim for its own liability for bad faith. Zurich is not an insured under the policy, it is the insurer, and furthermore, claims for bad faith under no circumstances are covered under a commercial general liability policy of this nature. And because of Zurich's . . . Why isn't your dispute here essentially with capital, not Zurich? I mean, capital paid Zurich under this reinsurance agreement. Maybe it shouldn't have, but I'm not seeing how capital . . . Agreeing with the district court, so help me understand how it erred. I'm not seeing how Zurich breached the policy by seeking and obtaining reimbursement from capital. Certainly, your honor. We're not saying that Zurich breached . . . We're saying that Zurich breached the policy because it paid a claim that was not covered. Capital, the reinsurer, did nothing wrong here. The reinsurance agreement between capital and Zurich mandates that when Zurich makes a payment under the policy, whether it should have done so or not, if Zurich submits a claim for reimbursement to capital, that claim must be paid. It does not give . . . The reinsurance agreement does not give capital the discretion not to reimburse Zurich. So capital has done nothing wrong. Capital is not in breach of any agreement. It is Zurich that is in breach of the terms of the policy for paying a claim that was not covered. Zurich's payment of the claim set in motion the damages to the plaintiffs. You wrote that Zurich settled the claim with Diaz using policy funds. What do you mean by policy funds? Your honors, the policy has a set amount of limits. It has $5 million limits per occurrence and $5 million in the aggregate. The $5 million aggregate limit is the most amount of money that can ever be paid out under that policy from the issuance of the policy until the end of time. And so when Zurich pays a claim under the policy, it reduces the limits that are available to the plaintiffs for future claims. And this is not the only claim that is made or was made or will ever be made under the policy. The plaintiffs should have the benefit of using that whole $5 million for their own liability. That's the whole purpose of commercial general liability insurance. Has there been claims that have been denied as a result of the payment of this claim with Diaz? I'm not aware of that, your honor, but I think that the complaint alleges, and on a motion to dismiss, reviewing the complaint in the light most favorable to the plaintiff, the complaint alleges that the policy had limits and that Zurich paid the claim out of the policy limits, thereby reducing the limits that are available to the insured. But there's been no instance in which Zurich has either limited or denied coverage to HBI, right? Zurich has limited coverage in the sense that it used some policy limits, so those limits are no longer available to HBI. HBI does have a claim that's currently pending under the policy because HBI was also sued in connection with this same construction incident. Diaz, the general contractor, sued Hayward-Baker. And Hayward-Baker tendered that claim to Zurich for a defense, and Zurich said, yes, we will defend you, Hayward-Baker. But there was no settlement made on behalf of Hayward-Baker. No indemnity was paid on behalf of Hayward-Baker. So Hayward-Baker needs the limits of the policy in order to provide indemnity for that claim should a ruling be made against them in the future. But other than that existence of the claim, there aren't any other facts that I could see in the complaint that suggest you're pushing up against that limit? No, your honor. I'm not aware of whether the limit is being pushed up against, but I believe that that's something that we would need discovery on in order to prove at trial. I believe that the complaint pleads sufficient facts to suggest that the plaintiffs were damaged not only by the reduction in policy limits, but that they were actually financially damaged. Each of the plaintiffs ended up having to pay a portion of Zurich's settlement with Diaz. So in addition to the reduction of the policy limits, they were damaged financially, and Keller Foundations also had to pay a deductible. But isn't that a result, again, of Capital deciding to pay off on the policy, not going to arbitration in London, and the arrangements between your clients and Capital? No, your honor. Again, Capital had no discretion to pay, and I'd like to submit to this court that even to the extent that perhaps the plaintiffs have some sort of dispute with Capital, even if the plaintiffs think that Capital did something wrong, that doesn't bar the plaintiffs from also having a claim against Zurich for its breach of contract. Because the plaintiffs are in direct privity with Zurich for purposes of the policy. The plaintiffs aren't a party to the Capital Reinsurance Agreement. So the dispute today is properly with Zurich, and you'll find that the complaint does allege each of the elements of a breach of contract claim against Zurich. It alleges that the policy existed. I don't believe that this fact is disputed. It alleges that there was a breach, because the policy has certain terms. The policy explicitly lays out what's covered. And here, Zurich used the policy to settle a claim that was not covered. Now, the district court said in its opinion that the policy gives broad discretion to Zurich to settle claims. Your honors, the policy gives Zurich essentially three rights. A duty to defend claims that may be covered. A duty to pay claims that are covered. And the discretion to settle any claims that arise out of an occurrence. An occurrence is an accident. First and foremost, the duty to settle claims is the duty to settle claims, or the discretion to settle claims, rather, on behalf of the insured. Zurich settled a claim on behalf of itself. It does not- Wait a second. There was an occurrence in that there was groundwater that leaked into the facility that was being built. And the claim was made by Diaz as an additional insured, right? Yes, Your Honor. Under the policy. And it wasn't just a claim with no basis alleging bad faith against Zurich. There was a basis for making a claim for coverage. Your Honor, Diaz's claim was twofold. It was a claim for coverage, and it was also a claim for bad faith. I believe that if it were only a claim for coverage, we wouldn't be here today. We wouldn't be disputing that Zurich could have settled that claim under the terms of the policy. But the fact remains that Diaz also had a bad faith claim against Zurich. And Zurich's settlement of payment to Diaz encompassed not only the coverage aspect of the claim, but also the claim for bad faith. Isn't the bad faith aspect of it just tied up in the basic indemnity obligation? No, Your Honor. Indemnity pays indemnity on behalf of the insureds. We're talking about a bad faith claim against Zurich for its wrongful behavior to Diaz. That's not insurable because bad faith is an intentional tort. The only things that are insurable under a commercial general liability policy are occurrences, which are accidents, such as the intrusion of groundwater into a building. I thought what Diaz was looking for was coverage for the damage that it had suffered and was claiming bad faith against Zurich for failure to cover. That is what they were seeking, Your Honor. So the bad faith claim that they were seeking against Zurich was for Zurich's own liability. Zurich acted wrongfully towards Diaz. That was intentional behavior on behalf of Zurich's part. Intentional behavior cannot be covered under a policy of this nature. The reinsurance contract is attached to the complaint? Yes, Your Honor. What provision of that is it that deprives capital of any discretion to avoid payment for something that's not covered by the underlying insurance? Section 3, Your Honor. Section 3 states that when Zurich submits a claim to capital, capital is obligated to pay the claim. That is the intent of the reinsurance agreement. And, Your Honors, I see that I am out of time. Thank you. Good morning, Your Honors. Cecilia Moss for Zurich American Insurance Company. And with me is Karen Baswell and Peter Chaffetz of my firm. Appellee Zurich's only obligations to appellants under the insurance policy before you are the duty to pay claims and the duty to defend. As Judge Engelmeyer correctly recognized in his decision below, the amended complaint does not allege that Zurich breached either of those obligations. In fact, appellants acknowledge that Zurich is complying with its duty to defend by defending appellant HBI in the Diaz HBI litigation. And no appellant claims that it is owed reimbursement for any sum paid as damages. Equally dispositive, as Your Honors alluded to earlier, even if paying another insured's claim somehow could be considered a breach of the policy, none of the appellant's damages arise out of the alleged breach of the policy. Instead, they arise out of the intercompany relationships between the Keller company and capital. Do you agree with your adversary's interpretation of the reinsurance agreement that it left no discretion in capital's hands as for payment? I do not, Your Honor. My opponent referred to Section 3 of the reinsurance agreement, which is at page A130 of the record. And in Section 3, you see that the reinsurance agreement provides that the reinsurer shall pay claims subject in all respects to the same risks, terms, conditions, rates, interpretations, waivers, modifications as the original policies. So the reinsurance agreement provides that claims are covered only if they are subject to the terms and conditions of the original policy. And if they are subject to the terms and conditions of the reinsurance agreement. So the reinsurer is only obligated to follow the settlements of Zurich if it finds that the claim being ceded to it both comply with the original policy and the reinsurance agreement. And the reinsurance agreement also has several provisions that contemplate, one, that a reinsurer would not pay a claim or that it would dispute a claim. And, of course, it provides for arbitration to resolve any dispute as to a claim. So the reinsurance agreement certainly contemplated the fact that a reinsurer would have the right to dispute a claim. So appellant's argument here is based on a false premise. It's based on the false notion that what they refer to as policy, that they refer to the notion that Zurich used policy funds to settle a bad faith claim against Zurich. But policy funds, as your honor recognized, don't exist. Zurich doesn't hold funds. So you disagree with the concept that by having the policy set limits that are effective during the life of the policy and having paid out a large sum that the funds are potentially not available should a large claim arise. So that's down the line at some point there's a potential rejection of a claim. Your honor, it is correct that the policy has $5 million in limits and that $450,000 were used to pay this claim. And so that $450,000 settlement did erode the limits. So there is the remote possibility sometime far off in the future that the fact that a claim payment used to pay one insured might affect the rights of other insureds. And that's one of the reasons why Zurich initially denied the Diaz claim. They would be complaining similarly if we had just paid the claim without denying it. Zurich took the position that the Diaz claim wasn't covered. Zurich was then sued by Diaz and made a motion for summary judgment seeking a declaration that Diaz's claim wasn't covered. The underlying court disagreed with Zurich's position. The parties went to mediation and Zurich made the reasonable decision to settle with Diaz and then cede that loss to its reinsurer. And the fact that there is the remote possibility that the limits would be eroded is something that Judge Engelmeyer left open for appellants to come back and argue. He denied the claim without prejudice as to any event that would happen in the future. So to the extent that appellants sometime in the future have a claim that is denied by Zurich because the limits of this policy have been eroded, Judge Engelmeyer left them without prejudice to plead that in a further amended complaint. But as to the facts that exist today, we come back to Zurich had two obligations under the policy, to defend the appellants and to pay claims. And by paying a claim to an additional insured, Zurich has not breached either of those obligations. So the amended complaint does not allege a breach of the policy. The adversary says this is in essence settling a bad faith claim against Zurich itself, and that goes beyond what any reasonable construction of the policy would permit. Yes, Your Honor. I may have problems showing that they are injured by that at this juncture, but you could certainly imagine consequences where the bad faith settlement of claims brought against the insurance company and the attribution of those claims to the policy limits could result in harm to the insured. Yes, Your Honor. So first of all, the settlement with Diaz covered all claims that had been made or could have been made against Zurich and any ensuing bad faith liability. At the time of the Diaz-Zurich settlement, there were no bad faith claims pending, and the settlement agreement recognizes that. And Judge Engelmeyer, excuse me, Judge Engelmeyer recognized that there were no bad faith claims pending. But even if you assume that the settlement covered bad faith, it still didn't constitute a breach of the policy obligations. We come back to the fact that Zurich did not refuse to defend the appellants in the underlying litigation, and Zurich has not failed to pay any claim. They haven't sought any claim to be paid, and Zurich is currently defending appellant HBI in the Diaz litigation. So we come back to the fact that the amended complaint does not allege a breach of contract. If Your Honors have no further questions, Zurich respectfully requests that the decision of the district court be affirmed. Your Honors, I'd first like to note that there was a bad faith claim pending against Zurich by Diaz. Florida law operates in a peculiar way. It bifurcates bad faith claims right from the beginning of the suit. You can't bring a claim for bad faith until you've proven that the insurer wrongfully denied coverage. So you have to first bring your coverage suit, and then you bring your bad faith claim. So the fact that there was no count one breach of contract, count two bad faith, it doesn't mean that there was no live bad faith claim pending. The bad faith claim was coming, and Diaz tried multiple times to amend its complaint to include that count. But it was forbidden to do so because of the way that Florida procedure operates. And the settlement and release agreement between Diaz and Zurich confirms that the settlement was not only for Diaz's coverage claim. It was also for Diaz's bad faith claim. So it is clear that at least some portion of the settlement was for Zurich's own bad faith. And Your Honors, let's even say even if bad faith were covered under the terms of this policy, which it is not, Zurich is not an insured. It cannot receive coverage under the policy for its own tort liability. And moreover, Zurich has absolutely no right to obtain a defense for lawsuits against itself under the policy. A defense is owed by the policy to the insureds. An insurer can never obtain a defense for lawsuits against itself under the policy. Your Honors, furthermore, this is an occurrence-based policy. Occurrence-based policies can last forever. There could be a claim 100 years from now for which plaintiffs can seek coverage under this policy. Plaintiffs need to have the full $5 million aggregate limits of the policy available to them because that is the benefit of the bargain that they made with Zurich. If there's a claim in the future, we can't say we should not resolve this now just because there is no dispute that perhaps the policy limits are dwindling down to zero. This needs to be resolved right now so that the plaintiffs can have the benefit of those policy limits when they need them. Thank you, Your Honors. Thank you both. We'll take the matter under advisement.